May it please the Court, Charles Michael from Steptoe, on behalf of the appellant, Stephany Yu. The threshold and dispositive question on this appeal is this. In an arbitral enforcement proceeding under the New York Convention, may respondents even raise, that is, may a district court even consider, the same procedural defenses that are ordinarily available to any other type of litigant in any other proceeding in U.S. courts? The district court answered that question, no, and this court should reverse. There are at least four key considerations I'd like to go over this morning. Number one, the plain text of the convention. Number two, other circuit court rulings on the same question or similar questions from the 2nd, 11th, and 1st circuits, all of which point in the direction of reversal. So what language in the New York Convention or the Federal Arbitration Act do you say gives authority in the district court's entry of the award to consider these procedural defenses? It's in Article 3, and the language is as follows, quote, each contracting state shall recognize arbitral awards as binding and enforce them in accordance with the rules of procedure of the territory where the award is relied upon, close quote. And it's that phrase, in accordance with the rules of procedure, that governs here. It doesn't say some rules of procedure. It doesn't say a subset of the rules. So that kind of leads to the question of what is a rule of procedure? So does procedure simply deal with form? How much is the filing fee? What's the paper you have to file? Or does it deal with substance and conditions? And all of the defenses in the New York Convention are substantive. Correct. I don't think there's a dispute in this case, at least we haven't heard an argument from the other side, that the two defenses we've raised in this case are anything other than procedural. We're talking about form nonconvenience and Rule 19 nonjoinder. The Supreme Court has correctly described form nonconvenience as a procedural defense. Rule 19 is within the rules of civil procedure. So is the restatement wrong when it says form nonconvenience is not applicable here? It is. I think the better view of things is you have the Second Circuit line of cases, the Mondry case, and Figueredo. But there are other cases, too. I would direct the court to... Well, this debate can go on and you have the D.C. line of cases, too. But it seems to me we're talking about a simple... The judgment in this case is only on Order 9, enforcing a money judgment in favor of the estate against you. And it didn't expand the judgment to include the amended petition, which was specific enforcement. So we're faced with a single monetary judgment enforcing a judgment of the Hong Kong arbitrator. And the question I have is if you find the person in Maryland and the assets are in Maryland, it doesn't matter where the assets are, you find the person in Maryland, you sue them there. This is not a trial. This is an enforcement, a single enforcement. It can be done again and again in countries all over the world to find people. The judgment was entered in Hong Kong, and we're simply enforcing that. And I don't understand, even in the slightest, why Ms. Yu isn't the appropriate, she's jointly liable for 10 million RMBs. And it seems to me that... May I make two responses? She lives in Maryland. You sue her in Maryland. She's lived here since 2016. Let me start respectfully with a correction. The judgment applies to the entire arbitral award, Orders 1 through 9. There's nothing... I beg to differ. I know they affirmed the arbitration agreement. You have to do that as a preliminary. But the judgment is only enforcing 8 and 9. 8 because of the timing, but the 9 is the monetary Order 9. And if so, that's the way we would read it and enforce it. Let's assume for the moment that that's the scope. There's no specific informants ordered. There is no other issue about properties and shares being sold and transferred. The court didn't address any of that. Well, all of that was what... Recall, they originally petitioned just to have Order 9. I stand. I acknowledge that. And then they filed a supplemental petition, but it ended up the court still decided just the one thing originally raised. The court did not address any specific performance. It did not profess any requirement of specific performance. It just approved the agreement, which it has to do, and then enforced Order 9. Well, that makes... Tell me where else to point out in the agreement other than the statement it approved the agreement. Well, the... What language? Where did it discuss any other obligations? By virtue of confirming the award. That's it. That has the effect of turning the award into a judgment. I'm reading much more into it because the specific order was we affirm the agreement. You have to because the defense is under the New York. You can avoid the whole agreement. So you have to affirm the agreement and it enforced Order 9. Right. The consolidated final judgment, Joint Appendix 2162, refers to the amended petition, which could not be more clear, was asking for the whole thing and says the petition is granted. But I will stop there and not belabor the point because it would be quite surprising to learn that we were only talking about money. But let's assume we are. It's not surprising. It didn't tell you to do a thing. The Orders 1 through 7 have you doing transferring stock and properties and things. Court didn't order any of that. I don't... And it didn't have the persons before it to do that. Exactly, which is we spilled a whole lot of... Well, let's assume so we don't get into a lot of arguments that are tangential. Let's assume at this point that it's only enforcing a money judgment here. Yes. And the amount of dollars as opposed to RMPs or bonds. We're only talking about the money. Yes. Our defense is for this to still apply because this is an unusual fact pattern. If you look at Joint Appendix page 467, you will see a letter that I wrote to their lawyers in Shanghai in closing a check in 2018. Nobody needs to receive a check. If you enter a judgment against me for a million dollars in the United States District Court and I give you a personal check, you can hand it right back. There's no requirement to accept a check and of course this check was drawn on a Chinese bank which would implicate Chinese currency being expelled from the country. But we have here a judgment being entered in the United States against you which was entered in Hong Kong under Hong Kong law. Right. And the only reason why we have this U.S. judgment is because they spent years dodging our attempts to pay. That's disingenuous. Have you given anything but a check drawn on a Chinese bank? We've had a wire that was returned. We've sent the check. We've asked repeatedly for a check. She has right now a bond covering the full amount. Yes. She's only obligated to pay in RMPs but I suggest to you that RMPs and the dollars are exchangeable currencies. They're in the Wall Street Journal every day. You can get equivalents without any problem. It's the third largest currency in international trade. So if the whole issue in this case is whether the judgment should be paid in RMPs or in dollars, we can discuss that. I understand you make that point. So let me get then to the public policy reason not to enforce Order 9 which is that if it's enforced here in the U.S. and if it's enforced in U.S. dollars, you're asking my client to break Chinese law. The U.S. courts have an absolute interest under the doctrine of international law. She's got money here in the United States. If you want it in RMPs and the district court said pay in RMPs, all she'd have to do is go across the street to the bank and get it in RMPs. Every bank in the United States that has international relationships can exchange money. It's on the FX exchange every morning in the journal. It is, but if you look at the journal, there's two different types of RMB. There's CHY which trades freely around the world and there's CNY which is within mainland China which is where it's regulated. Except this was imposed in Hong Kong and the currency was 10 million RMBs. Yes, RMB which is the Chinese currency imposed in Hong Kong related to, and this is important, the rental value of physical real estate. It's just a money judgment. It was just a money judgment. Right, and so respectfully, your honor, you asked about the restatement earlier. The restatement is also clear that in figuring out the currency and how judgments are to be paid, the court shouldn't go along with a judgment creditor that's playing games to get advantage, and that's what's going on here. Let me suggest to you that that judgment can be exchanged within a few hours just by going across the bank and having it exchanged. You can go to New York Bank and you can get it in RMBs, Chinese Yuan. You can get it in Euros. You can get it in Pesos. I mean, the notion that there's an advantage to the dollars, it can be converted. It doesn't solve the legal problem. And that's your best argument. That doesn't solve the problem that is forcing my client to break Chinese law. That doesn't break Chinese law to go to a New York bank and get the RMBs. Yes, what does break Chinese law is paying a Chinese-based obligation. It's not a Chinese-based, it's Hong Kong. Different laws. Respectfully, your honor, we have two expert sworn declarations that go through this chapter and verse, quote and cite the regulations. The district court didn't pay much attention to that because they were members of the law firm representing your client. Isn't that right? That's what they say on appeal. I'm asking you what it is. Sorry, it was my partner in our Beijing office that put in the evidence. Yes, what they argue on appeal is that you should ignore it for that reason. We're not in Beijing. We're in Hong Kong, which has its own laws. It has its own currency. The arbitrator said the original agreement is to be construed under Hong Kong law. The Hong Kong obligation was to pay 10 million RMBs. That, to me, is not paying in China through a check drawn on a Chinese bank, which is going to export the currency. I understand the export of currency is regulated. Yes, it is. This judgment was entered in Hong Kong, and it can be enforced anywhere in the world. It's no different, Your Honor. Hong Kong is a member of this New York Convention. And so is mainland China. But it's not China. That's my point. We're not in China, and it's not a Chinese judgment. My client has a residence and significant business interest in China and is being asked to effectively take money out. Hold it. She's not asked that. She's asked me to pay a $10 million judgment in Maryland. That's what she's being asked to do. And we're only in Maryland because for years they rebuffed and dodged paying. She's in Maryland because she lives here. Yes, we wouldn't be here if they had taken our money in China. I want to get to the point. The district court said that we cited no evidence on this point, and we did. That was just a plain oversight. I see that my time is up. There's more I'll get to on rebuttal. All right. Mr. Kushner. Thank you, Your Honors. My name is Amiata Kushner, and I'm an attorney for the estate of Ko Jung Gwang. I'll start with the fact that, as Your Honors have already noted, Ms. Yu is a resident of the state of Maryland. She has assets there. She's a United States citizen. We're not aware of a single case in which a convention petitioned for enforcement of an arbitral award under the convention against a United States citizen that resides in the United States was dismissed on forum nonconvenience grounds. You look at all the other cases that they cite, it's either – You can leave the forum nonconvenience aside. If you got to the substance of it, the only reason to have forum nonconvenience is to have a more convenient forum where there are documents and witnesses that can lend to the issue. And in this case, that's already been determined in Hong Kong. And the only thing is enforcement, and the convention requires you to attach Exhibit A, Exhibit B, and that's it.  And it seems to me we're not putting on evidence. It's an enforcement process. And I don't see why a forum nonconvenience would be applicable here at all. Absolutely, Your Honor. And I think just one other perhaps technical point is that I think this panel doesn't actually have to reach the sort of what counsel called the dispositive issue about whether forum nonconvenience is an available defense under the New York Convention. You can just assume without deciding that it is a defense and then find that the defense doesn't work in this case. So you can avoid – if Your Honors don't want to create a precedent in that regard, you can just kind of jump over it. It really is – it's not the dispositive issue. You can simply assume without deciding and get to the point Your Honor just made, which is this is not the right case in which a forum nonconvenience defense can be raised. It doesn't make any sense. Also, as Your Honors correctly pointed out, the judgment itself – Well, the opposing counsel also raised, at least I'm brief, I'm not sure he argued it here today, that in addition to the forum nonconvenience, there was a Rule 19 joinder argument made. Do you have anything you want to say about that? Yeah, the Federal Arbitration Act expressly allows petition to be brought by any party to the arbitration against any other party. It doesn't say you have to join all parties in the enforcement case. So I think if I understand correctly, and I cut off counsel, but I think his argument would be, and I think it would be well taken, that if there were specific performance requirements, then you would have to have the people involved in the specific performance remedy before the court. And that would be an issue that would have to be debated at that point. But here we're just talking about a money judgment that's jointly and severally applicable to Mizzou. And it seems to me that if the judgment is limited to that, the Rule 19 issue doesn't exist. Well, no party has requested specific performance. At the moment, the only thing that is sought to be enforced is the money judgment. It's true that – What about your supplemental petition? No, it's true that the petitions on their face ask for enforcement of all – I thought it was a poor strategic decision for you to amend and add that. Perhaps. I wasn't involved in the case at the time, but I take it, Your Honor. But even if – All the lawyers today are running. But just to push back on that – No, I understand. But it seemed to me to get full enforcement against all the parties to have transfers of stock and real estate and interest in real estate and all this other stuff, you would need the parties who are involved before the court. And the supplemental petition seemed to reach out beyond just enforcing Order 9. Well, respectfully, Your Honor, it's not as clear-cut as it may seem on its face because Ms. Hughes – the other respondents are her sisters and a corporation that we understand she's the ultimate beneficial owner of. So there may be a scenario in which Ms. Hugh herself may have the power to effectuate some of this. I know, but the judgments were entered differently. They were all, what, five respondents or how many, six, whatever it was. And she is Respondent 2. And Order 9 was directly applicable against her personally. Absolutely. The salient point is that no one has actually requested specific performance. And I can tell Your Honors that we've had discussions with the other side. We've actually told them before we seek specific performance, if we ever decide to seek it, we're going to talk to them and have a briefing in front of the district court to see whether that's even in the cards. So we're very, very far from Your Honors actually having to decide that question. It's purely hypothetical. Again, no one has actually asked for specific performance. What if she were required by the district court to pay your client in RMPs? Would that present a problem? Well, according to her – I didn't ask according to her. I'm asking according to you. As Your Honor pointed out, she's a resident of Maryland. She can go to any bank in the U.S. and pay in any currency. My point is, if the court ordered her to pay it in the currency through the exchange, would that be all right with you? No, we requested that the judgment be entered in U.S. dollars. That request was timely made in the petitions themselves. You requested it, but does it make a difference to you? It does. Why? Because U.S. dollar – I think if you just – all things being equal, people like to get paid in U.S. dollars. It's the most liquid, most stable currency in the world. But one of the things about arbitration and the reason why it formed nonconvenience and those things are not there, because we're just trying to enforce what an arbitrator has already awarded in the judgment in Hong Kong. So comedies would say you respect that and that's what you're doing and bringing this thing. But also, too, the idea of public policy. Why hurt potentially, obviously you, in terms of what impact that may or may not have in China with this currency, and just accept the currency and just walk across the same street and turn yours into good old U.S. dollars? Why would we want to do that to perhaps upset – because she has a lot of holdings still there. She's a U.S. citizen, but she's still tied financially there. Why would you want to do that when you can just take the money and you get U.S. dollars after she's paid you in the RMB? Well, the difference is that we're in a United States district court. The default is that U.S. I mean, my question is if she wants to pay in RMBs, that's the judgment, to pay in RMBs, 10 million, and a yuan, I guess it's Chinese yuan, they call it in the financial circles. But if the judgment were to pay you, the judgment in the district court were to pay you 10.3 million RMBs, would that be all right with you? No, we're not. We're entitled to what the judgment was. That's what the February 2018 arbitral – All you would have to do is to go to a bank, deposit it, and get dollars from that. Well – It's 7.1 right now. I saw it in the journal this morning. And I think it's the third largest international trading currency behind euros and dollars and whatever it is. But you just go to a bank and convert the RMBs into dollars. Well, there was a problem with the form in which they attempted to tender payment in RMB. I understand that one a lot because that's a currency control. A sovereign can control the export of currency. And China has a very strong policy on it right now. There's a tendency for a lot of the very rich people in China to want to have money overseas. And they're trying to curb that. And they have a bunch of laws. You have to get approvals and so forth. But the point is this money doesn't have to be from China. This is currency that you can get at any bank. You could get it in Hong Kong. You could get it in New York. I would answer the question as follows. We could accept payment of RMB in the United States. I don't see any practical reason why that couldn't happen. But we're entitled to demand payment in dollars in the United States. I'm not sure you are. The judgment says RMBs. Now, to enforce it in dollars, you may have a case. That's what I was asking you there. Because that to me is one of the issues they have. And if we're going to follow the arbitration judgment, it orders her to pay you 10.3 million RMBs. Now, to enforce that, the judgment would be in RMBs. Since it's in an American court, it's put in dollars. Just one factual correction, Your Honor. The March 2020 and June 2020 awards ordered payment in Hong Kong dollars. Those related to... They relate to other stuff. I understand that. So the original award was in RMB. The Hong Kong court enforced it, paying RMBs for part of it in Hong Kong dollars. Yes, that's right. My response on the issue of whether... Let me ask you a factual question. So does the original award say UOXRMB and it shall be paid in RMB? Or does it just say UOXRMB? I believe it just says UOXRMB. I mean, I don't have... and it shall be paid in RMB, and I think that's all you can get. Your argument is, I take it, that that's not what the agreement or the award says, and therefore you're entitled in American court to ask for dollars. Absolutely. I think if it had said it must be paid in RMB, we wouldn't be here debating this issue. There are a number of cases in the D.C. circuit which speak directly to this point, and they're cited in the party's briefing. There's the Continental Transfer case. On what point? On the point as to whether in a case arising under the convention, where a judgment or an award creditor is coming to the United States and asking for enforcement of a foreign arbitral award, the award creditor can ask for an arbitral award that requires payment in a foreign currency, non-United States currency, to be converted into United States dollars. Is that an entitlement or is that a privilege? In other words, can they resist that under the law? It's an entitlement under these cases, under the D.C. circuit's precedence, and it's also the default in the restatement. The default is that all judgments are entered in U.S. dollars. So in other words, what my adversary is arguing is, you shouldn't follow the default rule when you have an international arbitral award that's denominated in a non-United States currency. But the default is the opposite, that all U.S. court judgments are entered in U.S. dollars. So here we have the D.C. circuit saying, even if the foreign arbitral award requires payment in a foreign currency, the award creditor, at any time before a judgment is entered by the district court, can ask the district court to convert it into a U.S. dollar judgment. That's the Continental Transfer case and it's the LATOS case. LATOS case is D.C. circuit reported decision for 2018. And that case had a little of a twist in that, in that case, what happened was... You would carry extra weight if Judge Kavanaugh wrote it. Absolutely, Your Honor. Who wrote it? I'm kidding you. But the D.C. circuit said, and I quote, that the judgment creditor, LATOS, quote, could have asked for dollars instead of euros at any time before a judgment. So the arbitral award was entered in euros. And the D.C. circuit held, it could have been that the award creditor could have asked for it to be converted into dollars at any time before a judgment. It seems to me, just as a matter of judicial policy, that it's much to do about nothing if you have readily exchangeable currencies, international currencies. And euros to dollars and dollars to euros would be that. And I suggest that RMBs is in the same league. As a matter of fact, I think it's the public policy in China to try to make RMBs the international trade currency as opposed to dollars. But, so your argument is, the question is whether this is much to do about nothing if we can exchange. And the burden, it seems to me, you're suggesting the burden is if you're in the United States and you accept the euro judgment in dollars, that the court should do it in dollars. And if the other side wants it back in euros, they can convert it. That's right. The case law overwhelmingly says that the award creditor has the right to request the issuance of an award in dollars. They have a right to request. Does it require the court to do so? Yes. All right. And your case says that the court is required to do so because what you read, it says that they could have asked for a different currency before the judgment. That's what you said. Well, but the holdings, the other side is challenging and saying that the court's got it wrong. The other side in those cases was saying it was wrong for the court to convert the award into dollars. So by definition, the courts have to reach that issue and say, no, it was proper or it was improper. So here we have several cases in the D.C. circuit. I mean, it seems like you have a tinge of wanting to be punitive here. Am I wrong about that? It seems like you want to be punitive to you rather than getting your money, or in addition to getting your money, I should say, because it's not a choice. You get the money. But is that right? Is that right, counsel? Respectfully, it's not right. You know, it seems possible for the dollar to have lost value relative to the RMB, and the reverse is also true. So theoretically, they're convertible through the exchange rates. And the yuan has remained. It's depreciating a little bit, but it's remained quite stable. And as I looked this morning before our argument, it was 7.1 to the dollar. And within the past few years, it has gone down as low as about 6.15. So all I'm saying is, Your Honors, it's possible that the estate is coming out ahead by asking for the award, the judgment to be issued in dollars. It's possible we've come out behind, but that's not really the issue. The issue is whether or not we have the right. Is the time for conversion at the time of judgment? Yes. And I believe that's in the judgment. Yes. Anything else? Unless Your Honors have further questions, that's it. All right. Your Honors, just a couple of points on rebuttal. First, I want to start with the scope of the judgment. You heard my adversary say I wrote it down. No party has requested specific performance. What I didn't see in his papers was any suggestion that the judgment on its face doesn't cover the specific performance. If that's the way the Court reads it, I would just implore the Court to say so, because that would be news. That would be a welcome development, frankly. Second, on the issue of the currency and where the payment goes, I think the arbitration panel at least implicitly directed that the payment be in China, because there is a difference. Let me ask you this. Sure. If it was in RMBs, the district court put it in RMBs, I'm setting aside now the argument in these cases. Sure. Couldn't Ms. Yu, who she's put up $3.8 million in bond or whatever it is, 3.7 or whatever it is, couldn't she just take that money and convert it into RMBs and pay it in that form in New York? Yes, she could do that, but it wouldn't solve the problem. Sure, it would pay them off, and they would convert it back to dollars. Exactly. But what difference does that make? What difference it makes is that transaction happens totally outside the regulatory and taxing authorities in China. There's no regulation of this. This is an American judgment on a Hong Kong arbitration judgment. There is nothing in China that they're allowed to regulate what an American judgment can do. Now, we can order it in RMBs, and it can be converted in the United States into dollars, or it can be converted from dollars into RMBs in the United States. We have an essentially unrebutted, detailed, expert affirmation as to why, respectfully, Chinese regulators consider this sort of transaction as a way of pulling money out of China. No different. Look, there is money out of China already. There are RMBs all over the world. I don't understand your argument. You keep suggesting that the money's being pulled out of China, and it's not. No, it is not. It's in the United States as we talk. There is money we had to place to stop execution of the judgment. Yes. There's money in Europe. You can get RMBs anywhere. China would love every international transaction to be done in RMBs. Right. And, Your Honor, you talked about looking at the Wall Street Journal. If you look at the Wall Street Journal, you'll see there are different exchange rates for CHY, which is... We're not in China. We're outside of China. Exactly. And that's because there's a difference. And the Hong Kong is outside of China. It was under Hong Kong law, and it was a Hong Kong judgment. And they are a member of the international group that signed on to this New York convention. And we are a member of that convention, and we've agreed to enforce Hong Kong judgments. Yes. And they're trying to get more than they bargained for by getting a windfall by getting this money. There's no windfall. It's an exchange. Even exchange. It's a windfall because they're getting freely tradable currency that, if they were paid in China, would have to be regulated in tax. It's not so easy to just snap your fingers and get money out of China. Hold it. Hold it. We have a judgment being paid. If she paid it in dollars in the United States, or paid it in RMBs in the United States, what is the difference? The difference is, when you're paying money that pertains to a Chinese obligation, it needs to be paid... It's not a Chinese obligation. Respectfully, it absolutely isn't. Sir, just stop. It's a Hong Kong obligation. The judge so found, the arbitrator found that this is under the Hong Kong law, and issued it in Hong Kong under the arbitration agreement, and imposed it in RMBs in part, and Hong Kong dollars in part. Let me just say one more thing about what the arbitrators did find. There was an argument about whether there should be interest on Order 9, the RMB part. We said the interest should stop because we tried to pay it. You tried to pay it with a check drawn on a Chinese bank, which would involve currency exit. And the arbitrators agreed with us. They said interest stops, because I think what that implicitly recognizes is that our efforts to pay in China were proper. The arbitration panel, if you look at the Cost and Interest Award, said we're stopping interest when you try to pay in China. And I think what that implicitly recognizes is that doing that was proper. And they're trying in the end run around that to get... The Chinese authorities have no visibility or any regulation over it. And I don't think that's appropriate. So, look, the currency is part of it, but it's really about the location of payment. And we have ample evidence in the record. Again, almost all of it unrebutted. Let me ask you, why do we have the convention then? The convention is an international agreement among nations where judgments in one nation can be enforced in another nation and be paid in another nation. This judgment can be entered in the United States and it can be enforced against misused assets in the United States. Yes, but the convention works in terms of misuse, trying desperately to pay it. We tried for years, and that's with the rest of it. For heaven's sakes, my client started a separate proceeding in Hong Kong to try to get us over the finish line to get this done. This is not a scofflaw dodging the judgment. The only thing I saw in the record is she was offering to pay a check drawn on a Chinese mainland bank. That's the only way she tried, and they didn't accept that for a lot of reasons. That isn't required under the arbitration agreement, that they accept a check drawn on a Chinese bank. I guess what I'm trying to impress upon the panel here is that the arbitration panel certainly implicitly found it, certainly would have understood that by separating out the currencies and using RMB, which I think in context there is onshore RMB. Again, what I've referenced is described in the papers with a different ticker symbol than what gets traded around the world. There is a difference between onshore Chinese currency and offshore. They're blurring that difference, and they're getting the windfall. Basically, money that, to be blunt, is more valuable outside of mainland China than it is within. There's nothing in the agreement that obliges them to go to China and pay this debt. They're in Hong Kong, and they're under Hong Kong law. That's what the arbitrator said. What there is, they're taking the advantage of the arbitration win, leveraging it to get a better currency, when we've been trying desperately to pay it. That's unfair. The parties agreed to this in the original agreement. We didn't agree to be taken advantage of this way. We agreed to pay what was due to be paid, and we tried desperately to do it. I can see my red lights on. If there are further questions, I'm happy to answer them. Okay. Thank you. We'll come down and greet counsel and proceed on to the next case.
judges: Paul V. Niemeyer, Roger L. Gregory, G. Steven Agee